**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CADIGAN & PARK, P.C.,

    Plaintiff,

v.                                                          No. 10-CV-694 WJ/WDS

ABBASID, INC., AZHAR SAID, PHOENICIAN
IMPORTS, INC., MARIA INVESTMENTS, INC.,
REGIN, INC., CHINASEA, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING ATTORNEY'S FEES AS DAMAGES FOLLOWING DEFAULT JUDGMENT**

THIS MATTER comes before the Court for a hearing on damages following the Court's granting of Plaintiff's Motion for Default Judgment on liability (Doc. 16). Having considered the parties' pleadings, witness testimony and exhibits, and arguments of counsel, the Court finds that the attorney's fees and costs requested by Plaintiff as damages in this lawsuit were reasonable and necessary fees and costs expended by Plaintiff in the course of providing legal representation of Defendants, and thus the Court finds in favor of Plaintiff on this matter.

**Background**

Default judgment was entered against Defendants on August 30, 2010 (Doc. 36).[1] Cadigan & Park, P.C. ("Cadigan law firm") is a law firm based in Albuquerque, New Mexico. The complaint alleges that Defendants failed to pay for legal services rendered which spanned the last two years and involved numerous lawsuits. Plaintiff is suing for attorney's fees owed under the various retainer agreements entered into by the parties, under theories of breach of

---

[1] Although Defendants answered the complaint, the answer was untimely, and the Court found that Defendants did not present good cause for the delay.

contract, unjust enrichment and promissory estoppel. The total amount of unpaid invoices, and the amount requested by Plaintiff as damages for this action, is $149,534.11.

Mr. Azhar Said is the sole shareholder of the named defendant companies, and – based on the testimony presented at the hearing –  is every attorney's worst nightmare.  Mr. Said retained the Cadigan law firm to represent him and his various corporate entities in various lawsuits when Mr. Said and his companies faced significant financial exposure.  Despite the aggressive representation and impressive results obtained by the Cadigan law firm, most of its invoices for legal services rendered were never paid by Mr. Said and the Cadigan law firm had to suffer the indignity of having its client, Mr. Said, write a hot check.  While Mr. Said has made periodic stabs at paying some of his legal bills, on the whole, he has refused to pay the bulk of them resulting in the Cadigan law firm having to pay third party vendors, such as court reporters, for work performed on behalf of Mr. Said and his companies.

## Discussion

The Cadigan law firm submitted an affidavit by attorney Michael Cadigan with attached time sheets which listed expenses and costs for the various lawsuits for which attorney's fees had been billed but not paid.  Mr. Said submitted several pleadings which objected to the fee requests.[2]  Mr. Cadigan, the sole shareholder of Cadigan & Park, P.C., testified at the hearing. Defendant Azhar Said was not present at the hearing, but was represented by counsel who cross-examined Mr. Cadigan.

---

[2]  At the hearing, Mr. Cadigan made an oral motion to strike two pleadings (Docs. 50 and 51) which were filed by Mr. Said after the Court's deadlines for the filing of objections on the issue of attorney's fees.  *See* Doc. 39.  The Court denied the motion on the basis that the Court intended to rely on one of the exhibits filed by Mr. Said in finding that Mr. Said had waived any purported attorney-client privilege as between himself and Mr. Cadigan.  *Cmp.* Doc. 50-1 (redacted letter) with Doc. 51-6 (unredacted version of same letter).

I.      **Basis for Requested Attorney's Fees and Costs**

Plaintiff's fee requests may be broken down by lawsuit as follows, with the federal lawsuit listed first:

- *Abbasid, Inc. v. First National Bank of Santa Fe,* Civ. No. 09-347 JP/LFG, consolidated with *Abbasid, Inc. v. Los Alamos National Bank*, Civ. No.09-354 JP/LFG (the "bank cases"): request for $88,123.08, representing unpaid fees for legal services and unpaid advanced costs billed to Abbasid, Inc. *See Doc. 40, Ex. A.*

- *Abbasid v. Said*, No. D-101-CV-2007-01879 (the "domestic relations case"): request for $43,550.74, representing unpaid fees for legal services, and unpaid costs provided to Abbasid, Inc., Azhar Said, Phoenician Imports, Inc., Maria Investments, Inc., Chinasea, Inc. and Regin Inc. The $43,550.74 reflects a $22,000 credit, which was paid by Mr. Said and applied to the original invoice amount of $65,550.74. *See Doc. 40, Ex. C.*

- *Tortilla, Inc. v. Lincoln Pl.*, No. D-101-CV-2005-02290: request for $10,072.62, for legal legal services and unpaid costs provided to Abbasid, Inc. and Azhar Said. *See Doc. 40, Ex. E.*

- *Robinson v. Abbasid, Inc.*, No. D-101-CV-2008-02082: request for $592.58 for legal services provided to Abbasid, Inc., Azhar Said and Phoenician Imports, Inc. Ex. G.

- *Horcasitas v. Abbasid, Inc.*, No. D-101-CV-2008-02919: request for $290.25, representing fees for legal services provided to Abbasid, Inc. *See Doc. 40, Ex. H*.

- *Dugan v. Abbasid, Inc., No. D-101-CV-2005-01265*: request for $139.46 in fees for legal services provided to Abbasid, Inc. and Azhar Said. *See Doc. 40, Ex. I.*

The Court's calculation of the requested amounts adds up to $142,768.73, and not $149,534.11 as requested in Mr. Cadigan's affidavit. *See* Doc. 40 at 3. At the hearing, Mr. Cadigan clarified that the discrepancy was due to a recent change in New Mexico gross receipts tax. He also advised the Court that the amount as calculated by the Court was acceptable as an award.

II.     **Whether Requested Fees and Costs are Reasonable and Necessary**

In order to determine an amount of attorney fees, courts generally use the "lodestar," or "reasonable fee" method of calculation, which is arrived at by multiplying the number of hours

3

reasonably expended on the litigation by a reasonable hourly rate.  *View Engineering, Inc. v. Robotic Vision Systems, Inc*., 208 F.3d 981, 987 n.7 (Fed.Cir. 2000); *see also, Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983).

A.        Reasonableness of Requested Fees and Benefit to Defendants

The largest amount of fees is requested in the "bank cases." This case involved a significant amount of commercial litigation in connection with Mr. Said's allegations of negligence and conversion against the banks, asserting that the banks were paying on checks payable to him without his authorization.  The action against the Santa Fe bank resolved in what the Court considers to be a good settlement.[3]  The lawsuit against the Los Alamos bank went to trial, and resulted in a verdict for the bank.  Despite an unfavorable verdict, Mr. Said and his company Abbasid, Inc. (which was also a plaintiff in that action) was nevertheless the recipient of the many hours of legal work expended by the Cadigan law firm.

The contentious domestic relations case was anything but a commonplace divorce case. Mr. Said is reputably a wealthy man, with assets which include at least all of the named defendant entities.  The disputes surrounding property settlement wound their way through two other states – Florida and Texas – before being resolved in New Mexico.  The Cadigan law firm was successful in persuading the New Mexico state court to give full faith and credit to an annulment of the marriage between Mr. Said and his wife, which was granted by the Texas state court.  This was a tremendous boon to Mr. Said, who stood to lose a significant portion of his assets under the community property law of New Mexico.

---

[3] The settlement amount was stated in what the parties characterized as a confidential settlement agreement.  Therefore, the specific settlement amount will not be specific in this opinion.

The *Tortilla, Inc. v. Lincoln Place* case was a landlord- tenant dispute which started as a claim for unpaid rent and involved cross-claims and counterclaims. The case came to a halt when one of the parties filed for bankruptcy. In the *Robinson* case, the plaintiff sued Abbasid, Inc. over a damaged rug. The requested fees and costs are minimal when compared to the legal services expended in the other lawsuits. The plaintiff in the *Horcasitas* case was a landscape planner who performed work on Mr. Said's Santa Fe store, but was not paid for his work. At the hearing, Mr. Cadigan testified that he did very little work in that case, which is reflected in the amount of fees requested.

Based on the Court's review of the parties' pleadings, testimony presented at the hearing, and counsel's arguments, I find that Plaintiff's requested fees and costs were reasonable and necessary, and that Defendants benefitted from the legal representation and services provided by the Cadigan law firm in all of lawsuits for which fees and costs are requested. The time sheets submitted by the Cadigan law firm are detailed and thorough. Mr. Cadigan's testimony supported the reasonableness of the work performed in all of the cases in which he represented Mr. Said and his companies.

Mr. Cadigan's hourly rate is $175.00. Other hourly rates for legal work performed range from $75.00 hourly to $130.00 hourly. I find these rates to be reasonable. *See Ramos v. Lamm*, 713 F.2d 546, 555) ("the first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge in the area"). Moreover, Mr. Said was informed by Mr. Cadigan that he charges $175.00 per hour, and Mr. Said agreed to this hourly rate as well as the other rates charged by other attorneys in the Cadigan law firm. Based on the Court's review of the time sheets, the number of hours expended in the legal representation of Defendants were

also reasonable and necessary. While some of the cases (those for which a moderate amount of fees is requested ) were not complex, the Court is convinced that the "bank cases" and the domestic relations case were time-consuming and difficult, and certainly prevented Mr. Cadigan from working on behalf of other paying clients of the Cadigan law firm.

B.      Defendants' Objections

Each of Defendants' arguments can be rejected easily. First, Defendants contend that there is no evidence of fee arrangements which support the fee requests, in that the parties had a contingency fee arrangement to cover all the lawsuits. However, Defendants' arguments are belied by their own exhibits. One is a copy of an Attorney Retainer Agreement for the domestic relations case, which obligates Mr. Said to pay for legal representation in that case on an hourly basis, and which lists the hourly rates for such representation. Doc. 47-1 at 7.

Mr. Cadigan conceded that he inadvertently referred to the "bank cases" as contingency cases in one of the many letters to Mr. Said exhorting him to pay his legal bills. *See* Doc. 51-6. However, Mr. Cadigan stated that he rectified this mistake in subsequent correspondence and dealings with Mr. Said. The Court finds Mr. Cadigan to be credible on this point in his testimony presented at the hearing. I find that there was only one lawsuit in which the Cadigan law firm represented Defendants – or any combination of them – on a contingency fee basis. That lawsuit was *Abbasid, Inc. v. The Travelers Indemnity Company*, Civ. No. 07-1006 WJ/LFG, which was removed to federal court by the defendant in that case, and was resolved in favor of the defendant on summary judgment. Plaintiff is not requesting fees or costs for any legal services in this case because the fee arrangement was contingent on recovery, and because no significant costs were expended. *See* Doc. 47-1 at 9 (copy of contingency fee agreement for *Travelers* case).

While I do not find any merit to Defendants' argument that the "bank cases" were to be handled under a contingency fee arrangement, if there was a contingent fee agreement, the Cadigan law firm would be entitled to one-third of the settlement amount in the litigation with the Santa Fe bank.

Defendants' second argument presented in his written objections to Plaintiff's request for fees is that the time sheets do not identify, distinguish, or break down the fees and costs associated with the services allegedly provided to the various client companies. Mr. Cadigan explained at the hearing that because Mr. Said is the sole shareholder of all the client entities, and can be viewed as the alter ego of these entities, the time sheets referred to all of the companies inclusively rather than separately. Defendants' objection has no merit: the time sheets sufficiently represent a listing of the legal work done by the Cadigan law firm for Mr. Said and the companies that were being sued in each of the lawsuits.

The last objection raised by Defendants is that Plaintiff's fee request interferes with other fee arrangements Mr. Said might have had with other attorneys who represented Mr. Said and/or his companies prior to Plaintiff's representation. This objection has no merit. The fee arrangements which governed the Cadigan law firm's representation of Defendants were executed between the law firm and Defendants, and did not involve any other attorneys with whom Defendants might have entered into agreements.

## Conclusion

In sum, I find and conclude that Plaintiff's requested fees and costs were reasonable in both the hourly rates requested and the hours expended; that these legal services were necessary in providing legal representation; and that Defendants benefitted from the legal representation and services provided by the Cadigan law firm in all of the lawsuits for which fees and costs are

requested.

The evidence presented at the damages hearing clearly shows that Mr. Said has made a practice of hiring lawyers to represent him in the numerous cases in which he is involved, either as a plaintiff or a defendant, receiving the benefit of their legal representation, and then not paying them.  This practice – at least as far as Mr. Cadigan is concerned – stops here. Mr. Said is hardly an unsophisticated legal consumer, in light of his various business dealings and involvement in numerous lawsuits.  Mr. Cadigan stated at the hearing that he feels he has a moral and professional obligation to satisfy any of the unpaid vendor invoices, notwithstanding the agreements in place obligating Mr. Said to pay these bills.  It is clear that Mr. Said has no similar feeling of responsibility.  While the Court cannot compel someone to have a moral obligation to pay their legal bills, the Court can impose the financial and legal obligation to do so.

**THEREFORE,**

**IT IS ORDERED** Plaintiff's Motion for Default Judgment (**Doc. 16**) is hereby GRANTED on the issue of damages in that Defendants shall pay Plaintiff the amount of $142,768.73 for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that post-judgment interest at the maximum rate allowed under federal law shall accrue on the unpaid balance of this money judgment.

A Rule 58 Judgment will be entered contemporaneously with this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE