**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

———————————

CADIGAN & PARK, P.C.,

     Plaintiff,

v.                                        No. 10-CV-694 WJ

ABBASID, INC., AZHAR SAID, PHOENICIAN
IMPORTS, INC., MARIA INVESTMENTS, INC.,
REGIN, INC., CHINASEA, INC.,

     Defendants.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO SET ASIDE
DEFAULT JUDGMENT**

THIS MATTER comes before the Court on Defendants' Motion and Memorandum Brief

in Support to Reconsider and Set Aside the Judgment and Default Judgment (Doc. 66).

Defendants ask this Court to set aside, under Rule 60(b), the default judgment entered against

Defendants on August 30, 2010 (Doc. 36), arguing that the failure to file a timely answer in this

case was not due to culpability on their part, and that they have meritorious defenses to the

action. They also ask the Court to alter or amend, under Rule 59, the default judgment and the

judgment on the issue of damages (Doc. 55) because of newly discovered evidence. For the

reasons below, the Court DENIES Defendants' motion.

**BACKGROUND**

On May 11, 2010, Plaintiff, an Albuquerque law firm, brought this suit against

Defendants in New Mexico state court for unpaid legal fees and costs. Defendants had

previously hired Plaintiff to represent them in several suits pending in New Mexico state and

federal courts. Defendants agreed to pay an initial retainer fee of $10,000 as well as up to $175

per hour in attorney fees which the Plaintiff submitted to the Defendants in monthly invoices. The parties also had a contingency fee agreement in place for one of the cases Plaintiff had worked on. After paying the initial retainer fee and making occasional payments on the account, Defendants stopped paying altogether. Defendants made repeated promises to pay—by liquidating assets, if necessary—but never actually tendered payment.

On July 23, 2010, Defendants removed this case to federal court on diversity grounds. On August 5, 2010, Plaintiff filed a request for entry of default because Defendants had not yet filed an answer—either in state or federal court (Doc. 15). On the same day, Plaintiff filed a motion for default judgment. The following day, on August 6, 2010, Defendants filed their answer (Doc. 21) to the complaint as well as their response to Plaintiff's motion for default judgment (Doc. 19). Because the Defendants filed an answer the day after Plaintiff requested entry of default, the Clerk of Court never entered default in this case. The Court both entered default and granted default judgment on August 30, 2010 (Doc. 36), on the grounds that Defendants had not shown good cause for their failure to file the answer in a timely manner. The Court held a hearing as to damages on September 28, 2010 (Doc. 53), in which the Court made findings and set damages at $142,768.73. Final judgment for the Plaintiff was entered on September 29, 2010 (Doc. 56).

Defendants now move to set aside the judgment. Defendants assert that they were not culpable with regard to their failure to file a timely answer, because the untimeliness was due to circumstances beyond their control and they were engaged in a good faith search for counsel to represent them. The attorney who removed this case from state court, Donald Kochersberger, was allegedly willing to represent them only for the removal itself. Mr. Kochersberger was apparently unwilling to draft the answer or file a counterclaim because he was "conflicted out" with regard to filing a legal malpractice counterclaim along with the answer. Defendants were

2

allegedly advised by Mr. Kochersberger against filing a timely answer, and later moving to amend the answer in order to add a counterclaim once it was prepared by another attorney with the expertise to do so. Therefore, Defendants argue, they were obliged to engage in a search to secure other counsel to file the counterclaim, and could not file an answer before they found appropriate counsel. They were unable to find counsel in time, and as a result, the answers of the corporate defendants were about 44 days late, while the answer of Mr. Said was about 24 days late.

Defendants argue that they have meritorious defenses to the action which should be heard on the merits. They argue that the cases Plaintiff worked on were contingency cases, rather than cases billed by the hour. They deny that there was any hourly fee agreement between the parties, and contend that in any case, such an agreement would be invalid due to several defenses such as breach of implied warranty, the doctrine of unclean hands, and novation, waiver or estoppel. They also raise procedural defenses such as lack of personal jurisdiction over several of the corporate defendants.

Lastly, Defendants move to alter or amend the default judgment because of newly discovered evidence that was not presented at the hearing on the issue of damages held on September 28, 2010 (Doc. 53). The evidence Plaintiff presented at that hearing apparently took Defendants by surprise, and Defendants were thus unable to proffer evidence of their own to counter Plaintiff's evidence and testimony—evidence which they have now and wish to present to the Court. Defendants also argue that the judgment should be altered because of a procedural deficiency in the Court's order granting default judgment on August 30, 2010 (Doc. 36). Defendants argue that their due process rights were violated when the Court both entered default and granted default judgment in the same order.

3

**DISCUSSION**

Federal Rule of Civil Procedure 60(b) allows a court to set aside a final judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The Tenth Circuit has further developed three requirements to consider in the context of setting aside a default judgment: "(1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the judgment." *United States v. Timbers Pres., Routt County, Colo.*, 999 F.2d 452, 454 (10th Cir. 1993). These factors are not "talismanic" and other factors may be considered. *Hunt v. Ford Motor Co.*, No. 94-3054, 1995 WL 523646, at *3 (10th Cir. Aug. 29, 1995). Likewise, the court need not consider every factor. *Id.*

Plaintiff does not argue the third factor in its response, essentially waiving the issue of prejudice. The first two factors, however, weigh heavily against Defendants. The Court finds that the default was the direct result of Defendants' culpable conduct, and that Defendants have failed to show a meritorious defense to this action. The Court thus declines to set aside the default judgment.

Defendants also purport to move, pursuant to Rule 59, to alter or amend the judgment of the Court on the issue of default (Doc. 36) and the issue of damages (Doc. 55). However, a motion made under Rule 59 must be brought within 28 days of the judgment which the movant seeks to alter or amend. Fed. R. Civ. P. 59(e). The Court granted default judgment on August 30, 2010 (Doc. 36), and ruled on the issue of damages on September 29, 2010 (Doc. 55). Defendants' motion to set aside the default judgment was filed on November 11, 2010 (Doc. 66)—well outside of the 28-day period after either judgment was issued. The Court does recognize that an initial motion to set aside the default judgment was filed by Defendants on

4

October 5, 2010 (Doc. 60), which would fall within 28 days of the Court's September 29th judgment. That initial motion, however, was stricken (Doc. 65).[1] More importantly, the first motion did not raise either argument that Defendants now advance under Rule 59. *See* Doc. 66 at 1 (due process and "new evidence" arguments made pursuant to Rule 59). Therefore, Defendants' entire motion will be construed under Rule 60(b)—not Rule 59(e).

### A.     Defendants' Culpability

Defendants argue the default judgment should be set aside on the basis of "mistake" and "excusable neglect." This argument relies on what Defendants consider to be bad legal advice from Defendants' counsel, Mr. Kochersberger, who represented them at the time this case was removed. Mr. Kochersberger was "conflicted out" and unable to draft the legal malpractice counterclaim himself, and allegedly advised Defendants that an answer should not be filed without the counterclaim. Because of this advice, Defendants undertook a search for alternate counsel, a search that apparently took them over a month.

Even if true, the fact that Defendants were waiting on the drafting of the counterclaim before filing their answer does not excuse their failure to timely respond to the complaint. The federal rules provide for leave to amend pleadings before trial. Fed. R. Civ. P. 15(a) (allowing amendments "when justice so requires"); *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1185-86 (10th Cir. 1999) ("liberal granting" of motions for leave to amend); *cf. Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 367 (7th Cir. 1983) (affirming the district court's refusal to set aside a default judgment based on the same argument advanced by the

---

[1] In having stricken the October 5th motion and in construing the present motion as not falling under Rule 59, the Court does not intend to preclude statutory tolling of the time to file an appeal. *Cf.* Fed. R. App. P. 4(a)(4)(A)(iv), (vi).

defendants).

What Defendants' argument amounts to, then, is that reliance on the advice of counsel should excuse them from failing to file a timely answer. The Tenth Circuit has soundly rejected this argument. A default judgment will not be set aside where the "failure to file an answer was not the result of mistake, inadvertence, or excusable neglect, but rather was an informed choice based on the advice of . . . counsel." *Otoe County Nat'l Bank v. W&P Trucking, Inc.*, 754 F.2d 881, 883 (10th Cir. 1985). "Rule 60(b)(1) is not available to provide relief when a party takes deliberate action upon advice of counsel and simply misapprehends the consequences of the action." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 578 (10th Cir. 1996). Litigants choose counsel at their peril. *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1010 (8th Cir. 1993); *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993) (concluding, in an appeal from an entry of default judgment, that "clients must be held accountable for the acts and omissions of their attorneys").

Further, Defendant Said is an experienced litigant. *See* Court's Exhibit 1 to September 28, 2010 Hearing (Doc. 53-1) (listing numerous lawsuits in which Plaintiff represented Defendant Said). The Court is extremely skeptical that he would have been unaware of the usual deadlines for proceedings in federal court. *Cf. United States v. Scharringhausen*, 226 F.R.D. 406, 409 (S.D. Cal. 2005) ("In light of Defendant's extensive prior litigation experience, his contention that he relied on his attorney's mistaken advice . . . strains credulity."). Even if Defendant Said was unaware of the deadline for filing a timely answer because his counsel did not inform him of the deadline, this argument is the same type of argument rejected above: a mistake or omission on the part of Defendant's counsel does not entitle Defendant to set aside the judgment. "[A]llegations of attorney carelessness do not afford a basis for relief from a

6

default judgment." *McMullen v. Wash. Nat'l Ins. Co.*, 1994 WL 75867, at *1 (10th Cir. Mar. 8, 1994).

The Court also finds that the lengthy search for new counsel in this case does not qualify as the type of "bona fide" effort that Defendants cite as excusable neglect. *Cf. Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp.*, 105 F.R.D. 113, 116 (S.D.N.Y. 1985). First of all, Defendants *had* counsel, and that counsel did not enter a limited appearance in this case. As such, counsel was expected to represent Defendants to the best of his ability during the course of this litigation. *Cf.* D.N.M.LR-Civ. 83.4(c) (requiring a court order before a lawyer may appear in a limited manner). Compounding their problems, the corporate defendants were already in default in the state case before it was removed to federal court. This is evidence of a persistent failure to adhere to deadlines and litigate cases in good faith, beyond just the default in federal court. Second, Defendants' inability to secure counsel is likely a result of Defendant Said's track record that was the very issue in this case: his persistent and pervasive failure to pay his legal bills. The Court has already made findings with respect to Defendant's culpability in this regard at the hearing on damages. Defendant Said cannot now escape the consequences of his own actions. Because Defendants' culpability is responsible for the default, rather than excusable neglect, the Court denies their motion in its entirety.

**B.    Meritorious Defenses**

Defendants must also show that they have meritorious defenses to the action in order to establish that the default judgment should be set aside. Given the Court's findings on the matter of Defendants' culpability, the Court need not reach the issue of whether Defendants can prove they have meritorious defenses in this case. "If the default was the result of the defendant's culpable conduct, the district court may refuse to set aside the default on that basis alone." *Hunt*

*v. Ford Motor Co.*, No. 94-3054, 1995 WL 523646, at *3 (10th Cir. Aug. 29, 1995).

It is nonetheless clear that Defendants cannot win on this factor. Even without a valid written agreement between the parties, a lawyer is entitled to recover the reasonable value of his or her services in *quantum meruit. United States v. 36.06 Acres of Land*, 70 F. Supp. 2d 1272, 1276 (D.N.M. 1999). At the hearing held in this case on September 28, 2010, the Court made findings with regard to the benefit Defendants received due to Plaintiff's legal services. While Defendant Said was too busy to attend this hearing himself, his counsel had the opportunity to call witnesses, cross-examine Plaintiff's witness, and make arguments regarding the value of the legal services Defendants received. In ruling on damages after the default judgment, the Court made findings with an eye toward a possible motion to set aside the default judgment, as Defendants' counsel represented he was planning to file such a motion. *See* Doc. 55 at 3-5. Specifically, the Court found "that Defendants benefitted from the legal representation and services provided by the Cadigan law firm in all of lawsuits for which fees and costs are requested." *Id.* at 5. In one case in particular, the "divorce case," the Court found that Defendant Said received a "tremendous boon" due to Plaintiff's legal services. *Id.* at 4. Because of these findings, the Court has evidently already rejected the contention that Defendants can establish a meritorious defense to this action.

Defendants also argue that they have found "new evidence," in response to evidence presented by Plaintiff at the hearing on damages, which shows that Plaintiff's characterization of the fee agreement was misleading. However, Defendants' "new evidence" goes to the exact same argument: the invalidity of the agreement Plaintiff claims was in place between Defendants and Plaintiff for previous legal work done. This argument will be rejected for the same reasons all Defendants' other arguments were rejected. Likewise, any other arguments which Defendants

8

offer along the lines of meritorious defense are rendered moot in light of Court's ruling that Defendants' culpability is responsible for the entry of default.

Defendants' behavior here amounts to beating the proverbial dead horse. The facts are the facts, and there is little else the Defendants could wring from them that would be helpful to this Court in ruling on this motion. The flood of motions at this point looks like little more than a delay tactic with regard to having to pay the sizeable amount of attorneys fees Defendants owe. At every stage of this case, Defendants have advanced the same arguments and this Court has consistently rejected them. The Court found no good cause to challenge the entry of default at the beginning of this case (Doc. 36), and Defendants have not given the Court any new arguments sufficient to support setting the default judgment aside now.

### C.      Due Process

Defendants argue that taking both steps of the two-step default process at the same time violated due process by foreclosing the "opportunity to properly contest the entry of default." (Doc. 63 at 7). They first argue that the proper procedure would have been for Plaintiff to have received an entry of default from the Clerk prior to seeking a default judgment from the Court. *Id.* Next, they argue that the Clerk cannot enter default if a defendant answers the complaint prior to entry of default. *Id.* The conclusion of this argument is that neither the Clerk nor the Court could have entered default once an answer was filed in this case, so the Court must vacate the default judgment. *Id.*

At the outset, the Court notes that a Rule 60(b) motion is an "inappropriate vehicle[] to reargue an issue . . . when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Servants of Paraclete*, 204 F.3d at 1012. "Absent extraordinary circumstances . . . the basis for the second motion must not have been

available at the time the first motion was filed." *Id.* The argument that default judgment is not proper without an entry of default could—and therefore should—have been brought up before the Court ruled on default judgment. There is no practical reason Defendants could not have brought up this argument in the response to the motion for default judgment. Raising the issue at this stage of the litigation prejudices the opposing party and violates the spirit of Rule 60(b)'s grounds for reconsideration. The Court will therefore reject Defendants' motion on this ground.

Moreover, none of the cases cited by Defendants support any part of their argument. Those cases generally stand for the simple proposition that an entry of default is a prerequisite for the Court's entering default judgment. In this case, because the Clerk was not authorized under the Federal Rules of Civil Procedure to enter default, the Court properly considered the matter instead. No case on which Defendants rely states that the Court cannot do so. In fact, it is "well-established that a default also may be entered by the court." *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982); *see also* 10 Moore's Federal Practice - Civil ¶ 55.12[3] & n.11 (3d ed. 1997) (noting that the court impliedly has the power under Rule 55(a) to either order the clerk to enter default or enter default itself).

Defendants are correct that the Tenth Circuit has held that "Rule 55 mandates a two-step process for a party who seeks a default judgment in his favor." *Williams v. Smithson*, 57 F.3d 1081 (10th Cir. 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)). However, the Second Circuit case cited by the Tenth Circuit, *Meehan v. Snow*, makes it clear that the focus on process is only intended to ensure that defendants have one opportunity to be heard, however that opportunity is granted:

> The omission of the entry of a default was largely technical because the hearing on the appellees' motion for the entry of a default judgment afforded the appellants the same opportunity to present mitigating circumstances that they

10

would have had if a default had been entered and they had then moved under Rule 55(c) to set it aside.

652 F.2d at 276.

Under this standard, Defendants' due process rights were not violated when the Court entered default and granted default judgment at the same time. Defendants' own argument admits that all a defendant is entitled to is "an opportunity to show good cause" after "the defaulting party is first made aware of the entry of default" (Doc. 63 at 6). Defendants received this opportunity because they contested the entry of default and argued the good cause standard when they filed their response (Doc. 19) to Plaintiff's motion for default judgment. The briefing on the motion for default judgment constituted all the process Defendants were due, because it afforded them notice and an opportunity to show cause for the failure to answer the complaint in a timely fashion. Giving Defendants two opportunities to respond, one after each step of default, would simply have allowed them to repeat the same arguments and waste this Court's and Plaintiff's time.

Moreover, there is support for the proposition that an untimely answer meets the "failed to plead" standard of Rule 55(a) just the same as no answer at all, thus enabling the clerk or the court to enter default even once an answer has been filed. *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, No. 6:09-cv-1968, 2010 WL 1002648, at *3 (M.D. Fla. Mar. 28, 2010) ("Diebold was in default on December 15, 2009, and this default was not cured by the unauthorized filing of an untimely Answer on December 16, 2009."); *Matlean v. Nevada*, No. 3:09-CV-00063, 2009 WL 3514573, at *1 (D. Nev. Oct. 29, 2009) ("Because Defendants' answer was untimely, the clerk could have entered . . . default against Defendants." (citing Fed. R. Civ. P. 55(a)); *Allen v. Hall*, No. 92-875, 1993 WL 193184, at *1 (D. Or. June 2, 1993)

11

("Because defendants have failed to comply with the requirements of Fed. R. Civ. P. 12(a) [which requires an answer to be filed within 21 days of service of the complaint], Allen is entitled to the entry of an order of default under Fed. R. Civ. P. 55(a)."); *Stevens v. Wiggins*, No. 90-7038, 1991 WL 152960, at *1 (E.D. Pa. Aug. 6, 1991) ("Although the Clerk did not enter default, the Clerk could have done so because defendants' response, being untimely, did not conform to the Rules."); *In re Inman*, No. 05-73169, 2007 WL 781940, at *3 (Bankr. N.D. Ohio Mar. 12, 2007) ("The court has determined for the reasons explained above that the answer was not timely served and thus Defendant has failed to plead or otherwise defend as required by the applicable rules. . . . Accordingly, the standard under Rule 55(a) has been met and 'the clerk shall enter the party's default.'").

What Defendants' position amounts to is the argument that because the Court did not consider the motion for entry of default right away, Defendants are entitled to bypass the "good cause" standard to show why they filed a late answer in this case. The Court is unconvinced that the procedural requirements of Rule 55 allow litigants to evade their own culpability in such a manner. The Court finds now-Second Circuit Judge Lynch's words on this subject highly persuasive:

> Rule 55(a) in fact provides for a default whenever a party "has failed to plead or otherwise defend as provided by these rules." Filing an untimely answer does not constitute pleading "as provided by these rules," which set time limits for responding to a complaint. *See* Fed. R. Civ. P. 12(a)(1)(A). . . . No authority supports appellants' argument that defendants can prevent entry of a default judgment simply by filing an answer, no matter how untimely, so long as it hits the courthouse before the judge signs a default judgment.

*In re Suprema Specialties, Inc.*, 330 B.R. 40, 46 (S.D.N.Y. 2005).

For these reasons, the Court finds that the Defendants have not met their burden to show that the default judgment should be set aside. Accordingly, the Court DENIES Defendants'

Motion and Memorandum Brief in Support to Reconsider and Set Aside the Judgment and

Default Judgment (Doc. 66).

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE